**Ronald MANN, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 1–878A235.

Court of Appeals of Indiana,
First District.

May 17, 1979.

Rehearing Denied June 19, 1979.

Donald H. Kutch, Hughes & Kutch, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

LYBROOK, Judge.

Forrest Owens (Owens) was in the business of raising hogs. In the course of this business, he had 65 pigs, aged 6–8 weeks, confined in a nursery pen on his farm. Owens left his farm for several hours on September 19, 1977, and the next day discovered his nursery pen to be emptied of all 65 pigs.

The day after this incident, Owens was aloft in an airplane to inspect the weed conditions on his farm. While performing this task, he flew over Ronald A. Mann's (Mann) farm and observed several pigs bunched together in one corner of an enclosed area. Such behavior was unusual, according to Owens and other experts, because pigs that are accustomed to an area generally distribute themselves equally over the area that they are confined within. Owens noticed that these pigs were much like the pigs taken from his own farm.

Owens personally returned to Mann's farm, and on close examination determined that the pigs seen from aloft were indeed his. He immediately notified the sheriff about the situation. Detective Ross, handling the investigation of the stolen pigs, procured a search warrant for Mann's farm, based on the information provided him by Owens.

As a result of the investigation, Mann was charged with a felony count of the Indiana Offenses Against Property Act. He was convicted of the charge and, thereafter, filed a timely motion to correct errors and a timely praecipe in order to perfect this appeal.

We affirm.

Mann brings the following issues for our review:

(1) Whether the probable cause affidavit for the search warrant was insufficient to support the issuance of a search warrant in that:

(a) It failed to properly establish the credibility of the informant, Forrest Owens, who provided the information upon which the affidavit and search warrant were based;

(b) It failed to establish probable cause that the property sought by the search warrant was located upon the property to be searched; and,

(c) It failed to describe the property to be searched for with sufficient particularity.

(2) Whether the trial court erred in overruling defendant's motion for new trial subsequent to discovering that testimony offered by the State to rebut and impeach the defendant's key witness was substantially factually incorrect and, therefore, could have been highly prejudicial to the defendant and reasonably could have been outcome determinative on the jury.

### I (a).

▮ We cannot uphold Mann's allegation that the probable cause affidavit was insufficient because it failed to adequately establish the credibility of the informant, Forrest Owens.

Before the adoption of Ind.Code 35–1–6–2 (since amended), the probable cause requirement for the issuance of a search warrant had to be predicated on facts within the actual knowledge of the affiant, and not merely any information known to him. Ind.Code 35–1–6–2 however:

". . . has greatly liberalized the requirements for issuing such warrants by permitting the probable cause to be grounded upon information based upon *credible* hearsay. Recognizing the dangers inherent in hearsay, however, the Legislature incorporated specific requirements into the statute to assure that the hearsay constituting the probable cause was *credible* in the mind of the issuing

authority and not merely in the mind of the affiant. These requirements are specific and simple and were designed to assure that the determination of credibility can and will be that of the issuing authority, made independently of the judgment of the affiant." (Original emphasis.)

*Madden v. State,* (1975) 263 Ind. 223, 328 N.E.2d 727, 729.

When the probable cause affidavit is based on hearsay, the statute requires the affiant to supply certain requirements in the affidavit presented to the issuing authority, in order to assure that the warrant is issued upon reliable hearsay provided by a credible person. In relevant part, Ind. Code 35–1–6–2 (since amended) provides:

"When based on credible hearsay, the affidavit shall contain reliable information supplied to the affiant by a credible person, named or unnamed, and it shall contain the following:

(a) Affirmative allegations that the credible person spoke with personal knowledge of the matters contained therein.

(b) The facts within the personal knowledge of the credible person.

(c) The facts within the affiant's knowledge as to the credibility of the credible person."

The Supreme Court in *Madden* said that such requirements were necessary to allow the issuing authority to make a determination of probable cause independently of the affiant's beliefs. *Madden v. State, supra,* 328 N.E.2d at 731.

Mann relies upon *Madden,* a burglary case, in alleging that the affiant made no allegation of facts within the affiant's knowledge as to the credibility of the informant. In *Madden,* the lack of such statement constituted reversible error, and Mann argues that the lack of such a specific statement in the probable cause affidavit in issue analogously constitutes reversible error. We disagree.

In *Madden,* there were several grounds upon which the probable cause affidavit

was proclaimed insufficient, one of which was that the affidavit contained no allegation of facts within the affiant's knowledge as to the credibility of the informants. *Madden, supra,* 328 N.E.2d at 731. The court stated, in determining probable cause, that the issue was:

> "*whether or not the affidavit contained the factual allegations required by the statute—allegations which, assuming them to be true, would warrant the issuing authority, independently of the affiant's beliefs, also to arrive at the conclusion that probable cause does, in fact, exist.* To make this determination, we must look solely to the affidavit to determine . . . (c) the *facts* within the personal knowledge of the affiant as to the credibility of his informant or informants—not what he believes concerning such credibility." (Our emphasis.) *Madden,* 328 N.E.2d at 730.

The affiant in *Madden* did not state who reported the burglary in question, how direct the informant's information was, or any reason to believe that the informant's statements were correct. Therefore, it was not possible for the issuing authority, independently of the affiant's beliefs, to arrive at the conclusion that probable cause existed nor that the informant was credible.

We feel that the case at bar is more like the case *Riddle v. State,* (1971) 257 Ind. 501, 275 N.E.2d 788. In *Riddle,* the victim of a robbery immediately called the police and informed them about the robbery, assisted the police in their investigation, and identified his assailant on the street within a few minutes of the crime. All this information was included in the probable cause affidavit before the issuing magistrate, and while not independent indicia of reliability, the court determined that the information was satisfactory to justify the magistrate's inference that the hearsay source was credible.

In the case at bar, Owens reported to Detective Ross of the Lawrence County Police Department that he had been robbed of his pigs. One day later, while performing an aerial inspection of his farm, Owens saw livestock on a neighbor's farm that resembled his stolen pigs. The next morning, Owens personally went to said farm and found pigs that he believed to be his in a fenced enclosure. Owens immediately reported his findings to Detective Ross. Ross included all of these facts in the probable cause affidavit that he brought before the issuing magistrate. We find, in light of the *Riddle* case, and the standards elicited in *Madden,* that the facts alleged in the affidavit, taken as a whole, warrant the independent finding by a neutral magistrate that the source of the hearsay was credible.

### (b.)

■ Mann's allegation that the probable cause affidavit failed to establish probable cause that the property sought was indeed located on the property to be searched is simply without merit.

Parenthetically, Ind.Rules of Procedure, Appellate Rule 8.3(A)(7) states that each error assigned in the motion to correct errors shall be appropriately argued in the appellate brief in support of the motion to correct errors, and that such argument must be supported by citations to authorities. No such authorities are cited for this contention by Mann. Therefore, the issue could appropriately be waived. We will, however, address the merits of Mann's allegation.

The probable cause affidavit unequivocally stated that Owens, the owner of the pigs, went to the Mann farm personally, viewed the pigs, and determined that they were his. We find that these facts, included in the affidavit before the trial court, were easily sufficient to establish probable cause that the pigs in question were on the property to be searched.

### (c.)

Appellant's next allegation of error, that the probable cause affidavit for the search warrant failed to describe the property to be searched for with sufficient particularity, is also without merit.

■ A search warrant must particularly describe "the place to be searched, and the

person or thing to be seized." *Indiana Const.* art. 1, § 11; *United States Const.* amend. iv. Further, a search warrant vesting discretion in an officer executing the warrant is void. *Rose v. State,* (1909) 171 Ind. 662, 87 N.E. 103; *Brown v. State,* (1959) 239 Ind. 358, 157 N.E.2d 174.

In the case at bar, in the probable cause affidavit for the search warrant, the pigs in question were described as "piglets of approximately six to eight (6–8) weeks in age, being a crossbreed of Yorkshire, Hampshire, and Duroc." Additionally, the affidavit stated clearly that Owens had observed the piglets at close range, and determined that they were his. A more thorough description is difficult to imagine, as 6–8 week old piglets are not normally the subjects of detailed morphological identification. This court feels that the affidavit, read as a whole, adequately described the piglets to allow issuance of a search warrant according to Fourth Amendment standards.

## II.

Mann's final allegation of error is that the court erred when it overruled his motion for new trial, subsequent to discovering that testimony offered by the State to impeach and rebut Mann's key witness was substantially and factually incorrect.

In testimony at trial, Caroline Phillips testified that she and her husband sold Owens breeder pigs which were purebred Yorkshire sows and purebed Duroc boars. Further, she testified that such breeders were not capable of producing spotted pigs. Owens testified that he only owned breeder sows which he had purchased from the Phillipses, and that he used purebred Duroc boars to breed his sows. At trial Owens identified, via pictures, certain spotted pigs found on the Mann farm as the pigs that were stolen from his farm. The evidence presented by Phillips and Owens was not, obviously, compatible.

Near the close of testimony, Walter Carter testified, in rebuttal to Caroline Phillips, that he thought that the Phillipses had bought 10–12 Yorkshire, Hampshire, Duroc crossbred gilts (immature breeder sows) from him, although he could not document such sale. Further testimony indicated that such crossbred sows would reproduce spotted pigs when mated to purebred Duroc boars. The inference was that perhaps the Phillipses had sold crossbred sows to Owens, and not merely purebred Yorkshire sows as Caroline Phillips had testified.

Subsequent to the verdict in favor of the State, Mann, at a hearing held on his motion to continue sentencing, elicited testimony from Walter Carter that Carter thought he *probably* had been mistaken in his previous testimony, and had not sold any crossbred sows to the Phillipses. However, Carter stated he was not certain whether he had sold the sows or not. Mann felt that such an admission by Carter constituted adequate cause for a new trial, because if the jury had not been faced with the conflict in the testimony of Phillips and Carter, it is probable that the jury would have found Mann not guilty.

We do not agree with the appellant's contentions.

First, Carter's testimony at the motion for continuance of sentencing was not at all positive that he had not sold the Phillipses Hampshire-Yorkshire crossbred sows. Further, much evidence was adduced at trial, from persons other than the Phillipses or Carter, that indicated that the sows Owens bought from the Phillipses were indeed crossbred Hampshire-Yorkshire sows.

In essence, appellant's allegation concerning the overruling of his motion for new trial, turns on the question of the breeding stock that Owens got from the Phillipses. Evidence concerning the breeding of this stock supported both parties to the case. On appeal, we do not reweigh the evidence or the credibility of witnesses. *Dewey v. State,* (1976) 264 Ind. 403, 345 N.E.2d 842. For this reason, we will not overturn the decision of the trial court, and we affirm its decision to deny appellant's motion for a new trial.

Affirmed.

LOWDERMILK, P. J., and ROBERTSON, J., concur.