**Carl Darrick WOODS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 49A04–8612–CR–370.

Court of Appeals of Indiana,
Fourth District.

Nov. 17, 1987.

John O. Moss, Robert G. Mann, Moss & Walton, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

Carl Darrick Woods appeals the trial court's judgment convicting him of possession of paraphernalia, a Class A Misdemeanor, fining him $29.00, and ordering costs amounting to $71.00. Woods alleges the trial court erred when it overruled his motion to suppress evidence seized from his residence. Woods contends the affidavit offered in support of the warrant failed to establish probable cause. We agree and reverse.[1]

### FACTS

Lt. Frank Ingram, a police officer with the Indiana University–Purdue University

---

1. Because we reverse, we address only the issues of probable cause and the suppression of the evidence.

at Indianapolis police, was engaged in a narcotics surveillance on Meridian Street on July 17, 1985. From a distance he observed Woods, then a fellow police officer, parking a car in front of Woods's residence. He noticed that Woods was wearing a blue surgical shirt, commonly known as a "scrub," that appeared to bear an ink marking identifying it as property belonging to a hospital supply company. Lt. Ingram reported his observation to Capt. Rogers of his department who said he had seen Woods wearing green scrubs at the police station the day before. Based on this information Lt. Ingram that same day filed a probable cause affidavit requesting a search of Woods's residence, and a search warrant was issued.

The officers who executed the search found two pairs of surgical scrubs in Woods's bedroom. (Record at 61). They also found a package of hand-rolled cigarettes, a pair of surgical hemostats, and a pair of forceps burned on the end.

On August 19, 1985, Woods was formally charged with violating the Indiana Uniform Substances Act, IND.CODE 35–48–4–11, and Possession of Paraphernalia, IND. CODE 35–48–4–11. Woods was not charged with theft or conversion of surgical scrubs. Before trial Woods filed a motion to suppress the evidence, but after a hearing, the court overruled the motion. At trial Woods objected to the admission of the evidence on the basis that the search of his residence was illegal. Woods moved for judgment on the evidence, but that motion also was overruled. The court found Woods guilty of Possession of Paraphernalia, but not guilty of Possession of Marijuana.

## DISCUSSION

### I. *Probable Cause*

The question presented—whether the magistrate had probable cause to issue a search warrant—concerns our fundamental right to protection from unreasonable searches and seizures as provided by our federal and state constitutions. The

Fourth Amendment long ago established the minimum requirements to protect citizens from indiscriminate searches based on general warrants. *Olmstead v. United States* (1928), 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944. The Amendment provides the following guarantees:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST.AMEND. IV.

Our Indiana Constitution contains almost identical language.[2] These great documents set forth the minimum standards under which our laws are to be enforced in order that all citizens may be secure from unwarranted invasions of their persons and homes.

■■■ In Indiana, except as specifically provided, no warrant can be issued until a magistrate has an affidavit before him. IND.CODE 35–33–5–2, Section 2(a). The affidavit must contain the essential facts to establish probable cause. *Id.; Mann v. State* (1979), 180 Ind.App. 510, 389 N.E.2d 352. Probable cause exists when the facts and circumstances within the officers' knowledge and of which they had reasonably reliable information are sufficient in themselves to warrant a reasonably prudent man to believe that a crime had been or is being committed, and that seizable property can be found at the place or on the person to be searched. *Carroll v. United States* (1925), 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543. In other words, probable cause is a "reasonable ground for belief of guilt." *Id.* at 161, 45 S.Ct. at 288 (quoting *McCarthy v. DeArmit* (1881), 99 Pa. 63). But a good faith belief is not enough. That faith must be grounded in facts which in the judgment of a court make the good faith belief reasonable. *Id.*

2. Indiana Constitution, Article I, section 11.

■ In reviewing an affidavit our court has found the quantity and nature of information necessary to determine probable cause is inextricably linked to each given set of facts. *Mers v. State* (1985), Ind. App., 482 N.E.2d 778 (Buchanan, C.J., dissenting) (citing *Layman v. State* (1980), Ind.App., 407 N.E.2d 259). Our task is not to perform *de novo* review, *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, but to determine whether the affidavit provided a substantial basis of fact from which the magistrate could conclude that a search warrant would uncover evidence of wrongdoing. *Id.* (citing *Jones v. United States* (1960), 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697). Although we must give deference to the magistrate where reasonable minds may differ whether an affidavit establishes probable cause, our deference may not be boundless. *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677. We may not defer to a warrant based on an affidavit that does not provide sufficient information from which a magistrate could determine probable cause. His decision cannot merely give formal sanction to the bare conclusions of others. *Id.*

■ In the case at hand our concern is whether the following affidavit, on its face, provided enough factual information to allow a detached and neutral magistrate to make a common-sense determination that probable cause existed to issue a search warrant. The affidavit stated:

LT. FRANK INGRAM, I.U.P.D., Indpls, Indiana swears or affirms that he believes and has good cause to believe— from my investigation I learned from reliable persons the following facts and attending circumstances that: on July 17, 1985, this affiant observed MR. CARL DARRICK WOODS, B/M/32, DOB 04/28/53, SSN 314–64–1853, who resides at 3630 N. Meridian St., Indianap-

olis, Indiana, Marion County, Apt. # 19 at the southeast corner of 37th Street and Meridian Street, enter into a white/red Chevrolet, plate 49E9683, '85 issue, and park the vehicle at his residence located at 3630 N. Meridian Street at 1032 hours, today's date.

Mr. Carl D. Woods was in possession of a blue scrub top which contained what appeared at a distance to be ink marking identifying it as property belonging to United Hospital Services, which supplies these surgical gowns to hospitals in the Indianapolis area.

On July 16, 1985, Mr. Carl Woods was also observed by Captain C. Rogers of the I.U. Police Department, Indianapolis Division. Mr. Woods was seen at 430 N. Agnes Street wearing a green surgical top and pants.

The property marked with ink marking is controlled by hospitals throughout the Indianapolis area not given to the general public.

Request the search to include all rooms and closets in control of Mr. Woods at 3630 N. Meridian Street, Apt. # 19 where the stolen property may be found. This is to include living room, bathroom, dining room, kitchen, bedroom, and all closets and other areas where property may be found.

For this affidavit to be sufficient it must contain a substantial basis of fact from which the magistrate could form a reasonable belief Woods was in possession of scrubs that belonged to another and his possession was unauthorized.[3] It is readily apparent there is no basis to form the reasonable belief Woods's possession was unauthorized. Assuming one could reasonably infer Woods was in possession of scrubs that belonged to another,[4] to infer the possession was unauthorized would re-

---

**3.** IND.CODE 35–43–4–2.

**4.** We question whether the affidavit could support an inference the scrubs belonged to another. We assume for the purposes of discussion the allegations in the affidavit are true. However, we take judicial notice that both new and used scrubs are available to the general public and are sold at surplus stores, surgical supply stores, uniform shops, etc. Due to the ready availability of scrubs and the ready availability of stenciling services one could draw an equal inference Woods owned the scrubs as that he stole them.

quire information specifically indicating a basis for such an inference.

The affidavit provides no facts to indicate Woods was not authorized to have the scrubs. The affidavit is silent as to whether Woods is or is not a hospital employee.[5] There is no allegation a hospital has reported a theft of scrubs. There is not even any certainty the officer accurately identified the ink mark he says he saw. The affidavit states merely the scrub *appeared at a distance*—not upon a close reading—to bear an ink marking of United Hospital Services.

The remaining question then is whether the statement "[t]he property marked with ink marking is controlled by hospitals ... not given to the general public" leads one to form a reasonable belief the scrubs were stolen.[6] If we were to conclude possession of an item which is under the control of an industry and not "given" to the general public leads to the inference the item is stolen, we would be inviting the police to search virtually every home in America. Any bailee could have his home searched.

There are many instances in the course of day-to-day living in which a person may be in possession of an item under the control of another and not given to the general public. For instance, a McDonald's uniform would not necessarily be given to the general public. But, could we allow police to arrest a person or to search his home because the police saw that person wearing a McDonald's uniform on the street? Certainly not. Or, how would we treat a person, possibly an employee, driving a vehicle bearing the insignia of his employer? Or, a person in possession of a pen, button, or cup used for advertising by an industry which controls such items and does not give them to the general public? Or, a person who wears a uniform that is under the control of his employer and not given to the general public? Is there any conceivable justification for an arrest or for searching a person's garage or home in these instances? Surely a police officer would not want his home to be searched on the basis he was seen wearing his uniform, which uniform was controlled in some way by a municipality. To conclude a person's possession of these items means they are stolen and the person is subject to arrest or to having his home searched is ludicrous. To draw this conclusion would make a mockery of the Fourth Amendment.

The affidavit also alleges Capt. Rogers saw Woods wearing a set of green scrubs the day before he was seen wearing the blue scrub. However, the affidavit does not allege the green scrubs bore an ink mark of any kind. We fail to see how wearing scrubs on two consecutive days raises the probability that a theft of scrubs has been committed. It may mean only that Woods had a preference for wearing scrubs. As stated earlier herein, scrubs are commonly worn by people both within and outside the medical profession and can be purchased inexpensively by the general public. The allegation that Woods wore a set of green scrubs the day before he was seen wearing the blue scrub lacks any inferential value on the issue of probable cause.

The Supreme Court has held a mere suspicion of a crime does not suffice for the requirement of probable cause. *Spinelli v. United States* (1969), 393 U.S. 410, 418–419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637.[7] The affidavit in the case at hand does not even support a reasonable suspicion of a crime. This affidavit lacks a substantial basis of fact upon which a detached neutral magistrate could have formed a reasonable independent belief that stolen property was present in Woods's home. *Massachusetts*

---

5. Even though Lt. Ingram knew Woods was a police officer, the affidavit does not contain any information about Woods's occupation nor does it allege Woods was not moonlighting at a hospital or medical facility, or that he was not otherwise entitled to have scrubs.

6. The statement scrubs are "controlled by hospitals" is ambiguous, and the affidavit provides no clarification as to the type or extent of control to which it refers.

7. Although the Supreme Court abandoned the reasoning of *Spinelli* and substituted the more flexible test for probable cause enunciated in *Illinois v. Gates,* we find nothing in the latter opinion that would elevate suspicion to probable cause.

*v. Upton* (1984), 466 U.S. 727, 731–732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721; *Illinois v. Gates, supra.* The search warrant should not have been issued.

## II. *Suppression of the Evidence*

█ Having determined the affidavit failed to meet the requisite standards to establish probable cause, this court must now determine whether the evidence gained from the illegal search was properly admitted. Until the Supreme Court decision in *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, the general rule was that *all* evidence obtained by searches and seizures which were later found to be in violation of the constitutional protections was inadmissible under state and federal law. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *Enlow v. State* (1955), 234 Ind. 156, 125 N.E.2d 250. But, in *Leon,* the Court created a good-faith exception to the federal exclusionary rule. The Court reasoned the rule could be modified without jeopardizing its ability to perform its intended functions of deterring official misconduct and removing inducements to unreasonable invasions of privacy, and providing procedures under which criminal defendants are prosecuted on the basis of evidence which exposes the truth.

As background, the Court noted there was no provision in the Fourth Amendment expressly precluding the use of evidence obtained in its violation. *Leon, supra* 468 U.S. at 906, 104 S.Ct. at 3411 (citing *United States v. Calandra* (1974), 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561). The Court observed that the exclusionary rule is simply a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent powers, and not a personal constitutional right in itself. *Leon, supra* at 906, 104 S.Ct. at 3411 (citing *Calandra, supra* ). The Court stated that whether one's Fourth Amendment rights had been violated, and whether the exclusionary sanction was applicable to the particular case were two separate issues, *Leon, supra* at 906, 104 S.Ct. at 3411 (citing *Illinois v. Gates, supra* ), and expressed its fear indiscriminate application of the exclusionary rule might engender disrespect for law and its administration. *Leon, supra* (citing *Stone v. Powell,* 428 U.S. 465, 491, 96 S.Ct. 3037, 3051, 49 L.Ed.2d 1067). Accordingly, the Court held "evidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded, as a matter of federal law, from the case-in-chief of federal and criminal prosecutions." *Id.* at 927, 96 S.Ct. at 3422 (Blackmun, J., concurring). Indiana courts have since adopted the good faith rule of *Leon. Blalock v. State* (1985), Ind., 483 N.E.2d 439; *Mers, supra.*[8]

Although *Leon* modified the exclusionary rule, the Supreme Court held suppression of evidence remains an appropriate remedy in those situations which will further the purpose of the rule, that is, the deterrence of unlawful police conduct. *Leon, supra.* In particular, the Court held suppression is appropriate when a reasonably well-trained officer would have known the search was illegal despite the magistrate's authorization.[9] *Id.* 468 U.S. at 923–925, 104 S.Ct. at 3421. The officer may either have had or

---

**8.** Judge Shields noted in *Mers* that there was no reason to reject the rule unless it later proved to be unworkable. *Id.* at 783. Her reservation about the good faith exception stemmed from Justice Blackmun's concerns about it. *Leon, supra.* He reminded the Court that it was basing its decision on empirical data tending to show suppression had had little effect in deterring police misconduct when officers acted in objectively reasonable reliance on a magistrate's determination of probable cause. Therefore, he said, the good faith exception would also need to be tested in the real world, and if it is found to cause a change in police compliance with the Fourth Amendment the Court would have to reevaluate it. He remarked "[t]he logic of a decision that rests on untested predictions about police conduct demands no less." *Leon, supra* at 928, 104 S.Ct. at 3423.

**9.** The Court also found suppression would be appropriate when a magistrate has abandoned his neutral and detached role, or when officers were dishonest or reckless in preparing an affidavit, or the warrant was so deficient in particularizing the place to be searched or the things to be seized that the executing officers could not have reasonably presumed it was valid.

may be charged with having had knowledge the search was unconstitutional. *Id.* An officer is held to an objective standard of reasonableness, and if his behavior does not manifest objective good faith, then exclusion of the evidence is justified. *Id.*

In the case at hand the officer could not have held a reasonably objective belief the affidavit contained a sufficient basis of fact to support probable cause a crime had been committed. Officers must have reasonable knowledge of what the law prohibits, *Id.* at 920 n. 20, 104 S.Ct. at 3419 n. 20, and clearly the law does not prohibit a person from having property that belongs to another unless his possession is unauthorized. To say that possession is unauthorized because property is marked to indicate it is under the control of an industry and not given to the general public is unreasonable. To draw the inference a theft has been committed there must be a substantial basis of fact to support that probability, and this requirement becomes even more important when the property is a commonly-owned, popular fungible good, such as a scrub.[10]

Our conclusion that the facts in this case fall within an exception to *Leon* is supported by the recent case of *Stabenow v. State* (1986), Ind.App., 495 N.E.2d 197.[11] In that case the search of the defendant's automobile under a warrant occurred after officers from a drug detail detained Stabenow at the Indianapolis Airport upon his arrival from Florida. They asked to search his hand luggage and to question him about a narcotics investigation. He consented to the search; they found valium for which he admitted having no prescription; and the officers arrested Stabenow

for two unspecified violations of the controlled substances act. Stabenow said he did not have a car, but his car was parked in the airport parking lot and had been under surveillance.

Later the same day an officer prepared an affidavit which was approved by the magistrate and contained the following:

"Frederick A. Warren, Police Officer swears or affirms that he believes and has good cause to believe that on November 27, 1984, a Mr. Joel L. Stabenow W/M was arrested at INdianapolis Airport [sic] for two (2) counts of Violations of the INdiana [sic] controlled Substance Act. Mr. Stabenow W/M has been under investigation by this officer for approximately one (1) month. At the time of Mr. Stabenow's arrest he was advised of his Miranda Rights and Mr. Stabenow stated he did not have a vehicle. Mr. Stabenow was observed leaving the airport on several occasions in a 1972 Green Chevrolet, bearing Indiana plate 48E9812 prior to November 27, 1984. Said plate is register [sic] to Joel L. Stabenow, R.R. # 2, Elwood, Indiana.

I am requesting to search Mr. Stabenow's vehicle for any evidence of a conspiracy to violate the Indiana Controlled Substance Act." *Id.* at 199.

Cocaine was found in the trunk of Stabenow's automobile.

Following the denial of his motion to suppress the evidence obtained from the search of his automobile, Stabenow brought an interlocutory appeal. On review, Judge Buchanan found that the information contained in the affidavit was insuf-

---

**10.** We are not saying that there will never be a time—although we cannot easily imagine one—when police may see a person in possession of an item so uncommon or rare that the possession *alone* will give probable cause a crime has been committed. Even were such an event to occur, we think it likely the police could also establish other facts to support the probability of a crime.

**11.** In another recent case, *Matter of M.R.D.* (1985), Ind.App., 482 N.E.2d 306 (transfer denied), this court also considered whether suppressing the evidence was appropriate. The admission of the evidence was upheld because the

probable cause affidavit contained sufficient facts to support all the elements of a crime and the only issue was the informant's truthfulness, reliability, and basis of knowledge. Further, Judge Ratliff stated the affidavit could reasonably be relied upon because the informant who called saying her daughter was to attend a party at which alcoholic beverages would be served to minors could reasonably have been presumed to be a distressed mother. Also, the officer went to the reported address and found numerous cars in the driveway, buttressing his belief the report was legitimate.

ficient to establish probable cause. He also found there were no facts to connect the car to any criminal activity. He observed that the affidavit did not give the location of the automobile at the time of Stabenow's arrest; it did not reveal why Stabenow was under investigation; it did not allege that Stabenow used the automobile in connection with any criminal act. Judge Buchanan concluded the affidavit was so lacking in probable cause that no law enforcement officer could claim objectively reasonable reliance on it, and the evidence should be suppressed.

In *Stabenow* there was no basis that evidence of a crime could be found in Stabenow's automobile. Here, there is no basis for believing a crime had been committed or that Woods had committed it. While it is difficult to compare two "bare bones" affidavits, we note that in *Stabenow* there was evidence a crime had been committed, whereas here there is no evidence of a crime at all. Instead, there is only an officer's conclusion a crime had been committed based upon the fact scrubs are controlled in some unspecified manner by hospitals and are not given to the general public.[12] That fact alone does not support a fair probability—or even a suspicion—the scrubs were stolen, and no reasonably well-trained officer could have held an objectively reasonable belief the search was constitutional.

Judgment reversed.

ROBERTSON and CONOVER, JJ., concur.

---

12. The *Leon* Court warned that an officer who relies on an affidavit supported only by "bare bones" conclusions will not meet the objective standard of reasonableness. *Id.*