THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD THIELE, Defendant-Appellant.

Third District   No. 82—362

Opinion filed April 29, 1983.

Robert Agostinelli and Sue Augustus, both of State Appellate Defender's Office, of Ottawa, for appellant.

Tony L. Brasel, State's Attorney, of Watseka (Matthew M. Schneider, Assistant State's Attorney, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

The defendant, Ronald Thiele, appeals his convictions for burglary, theft, criminal damage to property and resisting a peace officer following a jury trial in the circuit court of Iroquois County.

On appeal the defendant contends: (1) that his convictions for burglary and criminal damage to property should be reversed because he was not proved guilty beyond a reasonable doubt; (2) that the trial court erred when it denied defendant's motion to quash a search warrant and suppress evidence illegally seized on the ground that the search warrant failed to adequately specify the items to be seized; and finally (3) that the denial of defendant's motion for severance of the various counts constituted error.

The facts indicate that on February 16, 1981, at approximately 10:30 p.m., Francis Focken was looking out the front door of his house which was located about 150 feet east of the Martinton Grain Company office. Visibility conditions were poor due to the presence of rain and fog. Focken noticed a car driving slowly past the grain elevator. The car was described as a full-size, light gray, two-door model. Focken was unable to determine the make of the vehicle, nor did he see the license number.

The vehicle stopped near the elevator office and two people got out and the car left the area. Focken was unable to say whether the two individuals were male or female, although he believed they were males by the manner of their walk across the street. The two individuals walked to a light pole in front of the grain company office where they shut off the outside security lights by pulling a breaker switch. Focken then observed two people in the office with a flashlight. At this point he notified the Iroquois County Sheriff's Department to report a burglary in progress. As Focken continued to watch, the two people came out of the office and were picked up by the same car that had dropped them off earlier. The car left the area in an eastbound direction toward Donovan or Beaverville and Focken was unable to say how many people were in the car.

David Whitson, an Illinois State Trooper patrolling the area near Martinton, was the first officer to arrive at the scene, approximately 10 to 15 minutes following Focken's call. Focken and Whitson met each other at the office and each observed a broken window and some de-icer and change scattered on the office floor. Whitson remained at the scene of the break-in for approximately an hour, after which he turned the crime scene over to other investigators and returned to patrol in an attempt to locate the silver gray vehicle described by Focken.

Approximately three miles east of the grain company and one mile west of the Donovan Grade School, Whitson saw a silver car driving slowly towards him in a westerly direction. The car was a 1976 Ford Torino and it pulled into a driveway and stopped. Whitson pulled in behind the vehicle and asked the driver for identification. Donita Thiele produced a traffic citation from the glove compartment with her name on it. Whitson observed what appeared to be two men's wallets in the glove compartment, and when he opened one he saw that it belonged to the defendant, Ronald Thiele. Whitson also observed an open bottle of beer in the car and told the driver that he was going to issue her a citation for illegal transportation of alcohol. Whitson took Donita Thiele into custody because the car she was driving was similar to the description he received of the vehicle involved in the Martinton Grain Company burglary. Donita Thiele kept the keys to the unlocked car as Whitson left with her en route to the Donovan Grade School, where he met deputies from the Iroquois County Sheriff's Department, investigating what appeared to be another burglary at the grade school. Whitson saw a camera, a cardboard box containing fresh meat, a record player and some other small items placed outside the school on the driveway. When Whitson

returned to the driveway where the Thiele car had been left an hour earlier, it was gone. He next saw the vehicle at the Iroquois County sheriff's office at approximately 3 a.m.

On February 17, 1981, Whitson obtained a search warrant for the defendant's car. The search warrant commanded officers of the law to search the defendant's vehicle and seize the following:

> "Items taken from the Donovan Grade School and Martinton Grain Company, constituting evidence of BURGLARY in violation of Section 19—1a and THEFT in violation of 16—1a1 of Chapter 38 of the Illinois Revised Statutes."

The complaint for the search warrant was sworn to by Whitson and alleged that "a quantity of money was taken from the Martinton Grain Co." and that "a search of the Donovan Grade School revealed United States currency to be missing, photographic equipment, tape recorders, and meat from the kitchen, some of which was found outside the school and the main entrance." The search warrant itself failed to list any of the foregoing as items to be seized from the vehicle to be searched.·

Whitson searched the car at approximately 11:45 a.m. on February 17, the morning after the burglaries. The defendant's car had been immediately seized upon the defendant's arrest in Gilman and was towed to the Iroquois County Sheriff's Department where it remained until the search was conducted.

During the search Whitson seized two vests, a windbreaker, an insulated jacket, a plastic bag containing about $36 in change, three pairs of gloves and a crescent wrench. Whitson also seized two single dollar bills, a quantity of change and a $10 quarter wrapper from the defendant's coveralls during a search of the defendant at 3 a.m. at the sheriff's department.

George Sterrenberg, a co-owner of Martinton Grain Company, testified that the defendant did not have permission to be on the premises on February 16, 1981. He further testified that approximately $35 in change was missing from a container kept in the office refrigerator and he identified the vests, windbreaker and jacket as having come from the grain company office.

Gerald Olson was the principal of the Donovan Grade School and testified as to the nature and extent of damage done inside the school and as to the value of the items found on the sidewalk. Olson also testified that a small amount of change and a red money bag was missing from the school office.

A criminalist with the Illinois Department of Law Enforcement testified that he took samples of broken glass from the room in which

he determined the intruders made their entry into the Donovan Grade School, as well as glass standards from the cafeteria and office area where windows had been broken. The defendant's clothing was also collected for laboratory analysis.

A forensic scientist with the Illinois Department of Law Enforcement testified he performed a glass analysis on glass standards collected from the Donovan Grade School and certain glass particles scraped from the defendant's boots. However, the results of the comparison were inconclusive in that the glass particles could have come from the same source but they also could have come from a different source as well.

The defendant's arrest occurred when police officers spotted a vehicle matching the description given by Focken and Whitson at 1:45 a.m. on February 17. The defendant was driving the vehicle and a codefendant was the only passenger in the car. As the defendant was being patted down, he swung his elbow around and struck one of the arresting officers in the head. The defendant then tried to flee the scene but was captured and taken into custody. A red money bag was recovered from the pocket of the codefendant's coveralls. A pocket knife with the words "Martinton Grain" stenciled on the handle was recovered from the defendant's coveralls.

We first direct our attention to the circuit court's refusal to quash the search warrant and suppress the evidence seized from the defendant's automobile.

The United States Constitution and the Illinois Constitution both provide that no warrants shall issue without probable cause, supported by affidavit, particularly describing the place to be searched and the things to be seized. (U.S. Const., amend. IV; Ill. Const. 1970, art. I, sec. 6; see also Ill. Rev. Stat. 1979, ch. 38, pars. 108—3, 108—7.) It is clear that general search warrants are prohibited by the fourth amendment. *Andresen v. Maryland* (1976), 427 U.S. 463, 49 L. Ed. 2d 627, 99 S. Ct. 2737; *People v. Raicevich* (1978), 61 Ill. App. 3d 143, 377 N.E.2d 1266.

The problem posed by the general warrant is not that of an intrusion *per se* but of a general exploratory rummaging in a person's belongings. The fourth amendment addresses the problem by requiring a "particular description" of the things to be seized. *Collidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.

■ We believe the defendant here has successfully shown that the complaint for search warrant and the search warrant for the defendant's vehicle did not comport with the particularity requirement of the fourth amendment, the Illinois Constitution or the Code of Criminal

Procedure of 1963.

The warrant in the case at bar was clearly constitutionally inadequate. The only guidance given to the officers who conducted the search was to seize "items" taken from the Donovan Grade School and the Martinton Grain Company. There was nothing in the warrant which limited the scope of the property to be seized or to curtail the discretion of the officers in executing the warrant. *People v. Raicevich* (1978), 61 Ill. App. 3d 143, 377 N.E.2d 1266; see also 2 W. LaFave, Search & Seizure, a Treatise on the Fourth Amendment sec. 4.6 at 102 (1978).

In reaching our decision, we are not unmindful of the People's argument, which properly reminds us that

> "the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (*United States v. Ventresca* (1965), 380 U.S. 102, 108, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746.)

However, such "technical irregularities" as failing to even remotely describe a generic class of items to be seized make it impossible for us to uphold the validity of the search warrant here. *People v. Harmon* (1980), 90 Ill. App. 3d 753, 413 N.E.2d 467.

The State contends, however, that even if we should conclude that the circuit court erred in denying defendant's motion to quash the search warrant, such an error was harmless since the items seized would have been inevitably discovered during a routine inventory search of the defendant's car. *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092; *People v. Ruffolo* (1978), 64 Ill. App. 3d 151, 380 N.E.2d 1204; *People v. Jordan* (1980), 90 Ill. App. 3d 489, 413 N.E.2d 195.

In response, the defendant points out the State did not argue the inevitable discovery doctrine at the trial level and contends such an argument has therefore been waived. *People v. Fuentes* (1980), 91 Ill. App. 3d 71, 414 N.E.2d 876.

Also, even if there was no waiver, the defendant contends that unlike *Jordan* where there was an offer of proof that the routine booking procedure would have included a complete search of the defendant's person, there was no such evidence that inventory searches were a customary procedure at the Iroquois County Sheriff's Department or that an inventory search was necessary. *People v. Jones* (1981), 102 Ill. App. 3d 238, 429 N.E.2d 1094.

This is not to suggest that any inventory undertaken even in compliance with a police department regulation is lawful. "Unconstitutional searches cannot be constitutionalized by standardizing them as a part of normal police practices." 2 W. LaFave, Search and Seizure, a Treatise on the Fourth Amendment sec. 7.4, at 577 (1978).

■ We conclude, therefore, that even if the inevitable discovery argument was not waived, there is no support in the record for the State's assertion that an inventory search would have been made.

■ Since the warrant failed to specify the particular items to be seized and there was no evidence in the record to suggest that an inventory search was routine police practice which would have inevitably led law enforcement officers to the items seized, we conclude the circuit court's ruling denying defendant's motion to quash the search warrant and suppress said evidence was in error.

Finally, defendant contends that the circuit court abused its discretion when it denied his motion for a severance for trial of the various offenses filed against him.

While it is true that a defendant may not be placed on trial for separate offenses when it appears these offenses are not part of the same transaction or occurrence (*People v. Pullum* (1974), 57 Ill. 2d 15, 309 N.E.2d 565; *People v. Fleming* (1970), 121 Ill. App. 2d 97, 257 N.E.2d 271), we note that the important factors to be considered in deciding the question of severance concern the proximity of time and location of the various charges and the identity of evidence which would be presented to prove each charge. *People v. Mikel* (1979), 73 Ill. App. 3d 21, 391 N.E.2d 550.

In support of his contention that a severance would have been proper, the defendant contends that *People v. Bricker* (1974), 23 Ill. App. 3d 394, 319 N.E.2d 255 (defendant erroneously tried for the commission of two armed robberies occurring three hours apart and several miles from each other), is sufficiently analogous to the case at bar to entitle him to a new and severed trial of the burglary charges.

In response, the People contend the recent case of *People v. Tate* (1982), 106 Ill. App. 3d 774, 436 N.E.2d 272 (defendant properly tried for two offenses of home invasion and attempted rape and aggravated

battery occurring within one hour and one mile apart), supports their position that the circuit court properly denied defendant's motion for a severance here.

■ We believe that while time and place factors are certainly relevant to the determination of whether a severance should be granted in a given case, there are additional factors which must also be considered and given weight such as the similarities of the acts themselves and whether there was a common method of operation on the part of the perpetrator of the crimes, and whether the same or similar evidence would be presented to prove the elements of the offenses charged.

■ In the case at bar the crimes were indeed similar, if not the same offenses occurring within a short time and place of each other. The defendant and codefendant when arrested had in their possession items taken from both burglaries. We believe, therefore, that the circuit court properly denied defendant's motion for severance.

Even though we have determined that the search of the automobile was invalid and that the evidence obtained from such search was inadmissible, and it is therefore necessary to reverse the defendant's conviction, we are, however, of the opinion that sufficient evidence remains to support a retrial of the defendant. The defendant's conviction for the offenses of burglary, theft, criminal damage to property and resisting a peace officer are reversed and this case is remanded to the circuit court of Iroquois County for the purpose of a retrial.

Reversed and remanded.

HEIPLE and BARRY, JJ., concur.