THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
ROBERT BROWN *et al.*, Defendants-Appellees.

Third District   No. 3—86—0368

Opinion filed March 12, 1987.

John A. Barra, State's Attorney, of Peoria (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Verlin R. F. Meinz, of State Appellate Defender's Office, of Ottawa, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

Officer Peterson of the Peoria police department was assigned to investigate a burglary of the Uptown Eatery & Arcade in Peoria, Illinois, wherein certain stereo equipment was stolen. That equipment was specifically described by the owner of the business to Officer Peterson. During the course of the investigation, Officer Peterson learned from an anonymous informant that the perpetrator of the crime told the informant that part of the stereo equipment, a stereo mixer, was at the home of the defendants, Robert Brown and Alice Weber. Another part of that system, a stereo turntable, was at the apartment of John Randall. The informant also stated that he had personally seen the stereo mixer on the defendants' premises. The informant signed an affidavit stating what he had learned from the perpetrator of the crime. Based on this affidavit and a complaint from Officer Peterson, a search warrant issued authorizing the search of the defendants' home for the following:

"A Gemini MX7700 Audio Mixer, Black with missing mic mount (hole in top left); Audiotek Turntable BL-150, Silver with custom installed red power switch; Kenwood tuner, KT1000, Silver front with scratches and discoloration below volume knob; Marantz 1100 Preamplifier, Silver/black; AudioTechnica Cartridge, AT-11, red/white; and any other equipment, appliances or any other equipment, appliances or other property which is found to have been stolen in the commission of, or which constitute evidence of, the offense of (1) Theft; (2) Burglary."

Armed with the search warrant, and with Officer Peterson in charge, a dozen law officers, including nine from the vice and drug unit, proceeded to the defendants' residence. Deeming 12-law officers to be adequate in his search for the missing stereo equipment, Officer Peterson courageously did not ask for backup support from local units of the marines, army reserve, or coast guard.

As Officer Peterson read the warrant to the defendants, the other officers fanned out and began searching the house. After reading the warrant, Officer Peterson began looking at the stereo equipment on the premises, all of which was in the front room of the house. He

quickly located the "Gemini MX7700 mixer" listed in the warrant and seized it. The other police, meanwhile, continued searching the entire house. They searched above drop-ceiling panels; they looked in light fixtures, knicknack boxes, the refrigerator, the freezer, and bottles containing perfume and nail polish; they went through personal papers and photo albums; they dismantled a water bed and they required defendant Weber to undergo a strip search before she could use the rest room. During the course of the search the police found and seized certain controlled substances and two firearms.

On the following day, the defendants were both indicted for unlawful possession of a controlled substance. Defendant Brown was additionally charged with theft and two counts of unlawful use of weapons by a felon. The defendants filed a motion to quash the search warrant and suppress evidence illegally seized.

After the hearing on the motion to quash and the motion to suppress, the trial court found that the affidavit upon which the search warrant issued only gave probable cause to search the defendants' residence for a stereo mixer and that it did not contain allegations of fact which would authorize a search for other stolen items of stereo equipment. The judge also determined that the warrant language allowing for the seizure of "any other equipment, appliances or other property which is found to have been stolen in the commission of, or which constitutes evidence of, the offense of (1) Theft; (2) Burglary" was overly broad. Thus, the court suppressed all evidence invalidly seized during the execution of the warrant. The court also suppressed the validly seized stereo mixer in light of what it found to be a gross abuse of police power. The State appeals the ruling. We affirm in part and reverse in part.

■■ ■ The fourth amendment demands that a search warrant particularly describe the things to be seized. (U.S. Const., amend. IV; Ill. Const. 1970, art. I, sec. 6.) The purpose of this requirement is to ensure against law-enforcement officials exercising broad discretion in executing the warrant. (*People v. Allison* (1983), 115 Ill. App. 3d 1038, 452 N.E.2d 148.) A warrant description which does no more than refer to seizing "stolen property" is insufficient. *People v. Thiele* (1983), 114 Ill. App. 3d 189, 448 N.E.2d 1025.

■■ We agree with the trial court that the language in the search warrant, "any other equipment, appliances or other property which is found to have been stolen in the commission of, or which constitutes evidence of, the offense of (1) Theft; (2) Burglary" is inadequate and overly broad. This was not a case where a description of the stolen items was a virtual impossibility. Rather, the officer applying for the

search warrant knew the precise stereo equipment that had been stolen in the burglary under investigation. This added language invited a sweeping search of the defendants' home which was unjustified under the circumstances. The evidence obtained as a result of that search was correctly suppressed.

We reject the State's argument that the extensive search was necessary in order to locate the stolen Audiotechnica cartridge, the small unit on a turntable which contains the needle or stylus. This argument belies the facts. Any search, even one conducted pursuant to a warrant, must be reasonable in its scope and intensity. In looking for the items named in the warrant, the officers are free to search anywhere the objects of the search could reasonably be expected to be found. Looking in places where objects of the search could not reasonably be expected to be found converts the search into an unacceptable general search. *People v. Harmon* (1980), 90 Ill. App. 3d 753, 413 N.E.2d 467.

Officer Peterson testified at the suppression hearing that a cartridge matching the description in the warrant had been located earlier that day at the apartment of John Randall. The remaining items in the warrant were fairly large, but the officers continued to search in small areas. They also searched through photo albums and personal papers, places where even the cartridge could not reasonably be expected to be found. Further, they failed to look in the most obvious location for the cartridge—among the other stereo equipment. The search was unreasonable in both scope and intensity and thus became an unacceptable general search.

We also reject the State's argument that the narcotics and handguns were validly seized under the doctrine of plain view. The plain-view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior fourth amendment justification and who has probable cause to suspect that the item is connected with criminal activity. (*People v. Caserta* (1984), 123 Ill. App. 3d 608,463 N.E.2d 190.) Here, the State failed to introduce any evidence showing where the narcotics and handguns were found. Therefore, the State's argument cannot be supported by the record.

Though we agree with the trial court that the infirmity of that part of the warrant using the general language requires suppression of evidence seized pursuant to it, we do not agree that it requires suppression of evidence seized pursuant to the valid portions of the warrant. "[I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and

magistrate erred in seeking and permitting a search for other items as well." (2 W. LaFave, Search and Seizure sec. 4.6(f), at 258 (2d ed. 1987).) The search for and seizure of the stereo mixer, if otherwise valid, is not rendered invalid by the defects concerning the other articles.

In this case, the court found that the stereo mixer was validly seized and no one disagrees with this finding. However, the court suppressed it because of the manner in which police officials conducted the remainder of the search. We believe that in this instance the invalid portions of the warrant are severable from the authorization relating to the named stereo mixer and that the trial court erred in suppressing the stereo mixer as evidence. Accordingly, the circuit court of Peoria County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

SCOTT and WOMBACHER, JJ., concur.