**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Rodney DALLMANN, Defendant and Appellant.**

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Ricky PERLEBERG, Defendant and Appellant.**

Cr. Nos. 880201, 880202.

Supreme Court of North Dakota.

June 6, 1989.

---

Ronald G. Splitt (argued), State's Atty., LaMoure, for plaintiff and appellee.

Weiss, Wright & Paulson, Jamestown, for defendants and appellants; argued by Thomas E. Merrick, Jamestown. Appearance by Robert Martin, Jamestown.

LEVINE, Justice.

Rodney Dallmann and Ricky Perleberg appeal from criminal judgments entered upon jury verdicts finding them guilty of theft of property. We affirm.

During 1987, authorities were investigating a series of livestock thefts in LaMoure County, Stutsman County, and surrounding counties. The investigation eventually pointed to the involvement of Dallman and Perleberg. On August 18, 1987, numerous law enforcement officers appeared in the County Court of LaMoure County seeking a search warrant for the farm where Dallmann and Perleberg resided. In lieu of an affidavit, the following officers testified at the hearing on the application for the search warrant: Mark Roberts, Deputy Sheriff of LaMoure County; Detective Jer-

ry Mayer of the Stutsman County Sheriff's Office; Agent Dick Olson of the North Dakota Bureau of Criminal Investigation; and Dickey County Sheriff Walter Raugutt. The officers detailed the numerous livestock thefts and the defendants' alleged involvement therein. The county court determined that there had been a sufficient showing of probable cause to support the issuance of a search warrant.[1] A warrant issued authorizing the search of the farm for "livestock, ear tags, and other livestock paraphernalia which was stolen."

The warrant was executed the next morning. Roberts, Mayer, Olson, and Raugutt participated in the search, as well as three other law enforcement officers and the State Brand Inspector. Also present was Curtis Hanson, one of the theft victims. During the course of the search two other victims, Wilbert Elhard and Blaine Nitschke, were called to the scene to positively identify their stolen cattle. The search turned up four calves which had been stolen from Hanson, one calf stolen from Elhard, and one calf stolen from Nitschke. The defendants were subsequently charged with theft of property.

The defendants moved to suppress all evidence obtained as a result of the search, asserting that the warrant failed to particularly describe the articles to be seized.[2] The trial court denied the motion. The defendants were each found guilty by a jury of theft of property, judgments of conviction were entered, and the defendants appealed. Their appeals have been consolidated by stipulation. See Rule 3(b), N.D.R.App.P.

The defendants assert that the warrant was unconstitutional under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the North Dakota Constitution. Each of these constitutional provisions requires that no warrants shall issue except those "particularly

---

1. The defendants do not challenge on appeal the County Court's determination of probable cause.

2. The defendants also asserted that the warrant failed to particularly describe the place to be searched. They have not, however, raised this issue on appeal.

describing the place to be searched" and "things to be seized." [3]

■ The particularity requirement reflects the framers' denunciation of the writs of assistance, general warrants which authorized officers of the Crown to search wherever they pleased for goods imported in violation of British tax laws. *See Stanford v. Texas,* 379 U.S. 476, 481–482, 85 S.Ct. 506, 509–510, 13 L.Ed.2d 431, 435 (1965). The manifest purpose of the particularity requirement is to prevent the general, exploratory rummaging in a person's belongings which characterizes the general search. *See Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 80 (1987); *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627, 642 (1976); *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971). Perhaps the most oft-quoted expression of the particularity requirement's application is from *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231, 237 (1927):

> "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

As one leading commentator has noted, if *Marron's* direction that "nothing [be] left to the discretion of the officer" were read literally,

> "no description would pass muster unless it was so detailed that there was no chance of there being present upon the premises some other object which the description might encompass. Quite obviously, few warrants could pass such a test...." LaFave, Search and Seizure § 4.6(a), at 235 (2d ed. 1987).

Thus, various courts have held that search warrants are to be read in a commonsense and realistic fashion, and not in a hyper-technical manner. *See, e.g., United States v. Hinds,* 856 F.2d 438, 441 (1st Cir.1988); *United States v. Rome,* 809 F.2d 665, 669 (10th Cir.1987); *United States v. Bonner,* 808 F.2d 864, 868 (1st Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987); *United States v. Truglio,* 731 F.2d 1123, 1128 (4th Cir.), *cert. denied,* 469 U.S. 862, 105 S.Ct. 197, 83 L.Ed.2d 130 (1984); *State v. Sapp,* 110 Idaho 153, 715 P.2d 366, 368 (Ct.App.1986). *See also United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965) (affidavits in support of warrants must be interpreted in a commonsense and realistic fashion). In the same context, we have previously stated that warrants must not be subjected to a rigid and unrealistic reading. *State v. Gronlund,* 356 N.W.2d 144, 146 (N.D.1984).

■ It is therefore generally recognized that the degree of particularity required is flexible and will vary depending upon the circumstances presented, including the purpose for which the warrant was issued, the place to be searched, the type of crime involved, and the nature of the items sought. *See United States v. Henson,* 848 F.2d 1374, 1383 (6th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989); *United States v. Ellison,* 793 F.2d 942, 948 (8th Cir.), *cert. denied,* 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986); *Milliman v. Minnesota,* 774 F.2d 247, 250 (8th Cir.1985); *United States v. Trugilo, supra,* 731 F.2d at 1128. "[W]hether a warrant fails the particularity requirement cannot be decided in a vacuum." *Milliman v. Minnesota, supra,* 774 F.2d at 250. In this context, we stated in *State v. Gronlund, supra,* 356 N.W.2d at 146:

> "It is essential that the particularity requirement be applied with some degree

---

**3.** The defendants do not argue that we should apply a more stringent standard under our State constitutional provision than under its Federal counterpart. We therefore will, for purposes of this case, treat the two provisions as equivalents, and express no opinion whether greater protections are afforded under our State's constitutional provision.

of flexibility, depending on the type of property to be seized.... What constitutes reasonable particularity must be determined in light of practicality, necessity and common sense."

Thus, for example, the United States Supreme Court suggested in *Stanford v. Texas, supra*, 379 U.S. at 485, 85 S.Ct. at 511–512, 13 L.Ed.2d at 437, that a higher degree of specificity may be required when First Amendment rights are involved:

"In short, what this history indispensably teaches is that the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain."

The Court hinted that a lesser standard might apply if the items sought had been weapons, narcotics, cases of whiskey, or even *stolen* books. *Stanford v. Texas, supra*, 379 U.S. at 485 n. 16, 486, 85 S.Ct. at 512 and n. 16, 13 L.Ed.2d at 437 and n. 16. *See also United States v. Scharfman*, 448 F.2d 1352, 1354 (2d Cir.1971), *cert. denied*, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972) ("when first amendment rights are not involved, the specificity requirement is more flexible").

■ The place to be searched may also affect the degree of particularity required. In *United States v. Johnson*, 457 U.S. 537, 552 n. 13, 102 S.Ct. 2579, 2588 n. 13, 73 L.Ed.2d 202, 215 n. 13 (1982), the United States Supreme Court noted that the home has historically been afforded special protection under the Fourth Amendment. *See also United States v. Martinez–Fuerte*, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116, 1130 (1976) (private dwellings are "ordinarily afforded the most stringent Fourth Amendment protection"). Thus, it seems logical that the relative degree of specificity required in a warrant

may vary depending upon the nature of the place to be searched.

It is within the context of the foregoing policy bases of the Fourth Amendment that we must review the facts and circumstances of this case. In their testimony in support of the search warrant, the officers were able to provide somewhat more detail regarding the stolen livestock than was included in the warrant. For example, the Hanson cattle were described as "four black and white holstein calves, approximately four weeks old." The stolen Nitschke calf was described as a holstein calf weighing about 150–200 pounds, with a speckled color on one side, and with ear tags. The descriptions of the other stolen livestock were essentially similar, generally describing a series of thefts of young holstein calves. In addition, an incident regarding theft of hogs was reported where a wallet, traced to Perleberg, was found in the vicinity of the theft.

■ Rather than detail each animal stolen with whatever limited description was available, the warrant described the property to be seized as "livestock, ear tags, and other livestock paraphernalia which was stolen." [4] The same four officers who had testified in support of the warrant served the warrant and conducted the search, with assistance from other officers. They did not engage in a broad-ranging general search. They did not attempt to search the house located on the premises. They limited their search to those areas where livestock and ear tags were most likely to be found: the outbuildings and pastures where cattle were seen. Before seizing any property, they had the alleged owner appear at the scene and positively identify the calves as their own. The only items seized were the four Hanson calves, the Nitschke calf, and the Elhard calf.

■ The question presented in this case is not whether the warrant could have in-

---

**4.** The warrant was a pre-printed form with spaces to be filled in. The phrase "which was stolen" is part of the pre-printed form, and it clearly relates back to all property previously

listed. Thus, we construe the warrant to apply to stolen livestock, stolen ear tags, and stolen livestock paraphernalia.

cluded more detail in the description of the stolen livestock. The question is whether the warrant was constitutionally defective so as to require suppression of the evidence seized in the search conducted thereunder. The particularity requirement is to be applied flexibly based upon the circumstances presented in each individual case. We find a variety of factors present in this case which leads us to the conclusion that the description in this warrant was not constitutionally deficient.

Of particular importance in evaluating the requisite degree of particularity is the nature of the items sought. Numerous cases hold that a generic description of the items to be seized is constitutionally permissible if, because of the nature of the property sought or the circumstances of the case, a specific description is impossible. *See, e.g., United States v. Henson, supra,* 848 F.2d at 1383; *United States v. Hillyard,* 677 F.2d 1336, 1340 (9th Cir. 1982); *United States v. Scharfman, supra,* 448 F.2d at 1354. Illustrative is *United States v. Cortellesso,* 601 F.2d 28, 30 (1st Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980), wherein the court upheld a warrant authorizing the search of a clothing store for "stolen goods, wares and merchandise ... in particular men's suits, sports jackets, women's boots, leather coats, fur coats, rain coats...." *Id.* at 30. The court held this generic description adequate, specifically noting that "for all practical purposes the collection could not be precisely described for the purpose of limiting the scope of the seizure," and that "a more precise description would not have assisted the officer in the field." *Id.* at 32.

Similarly, in *United States v. Davis,* 589 F.2d 904, 906 (5th Cir.), *cert. denied,* 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979), the court held that when an exact description of the items sought is a "virtual impossibility," a description of the generic class of items sought will suffice. *See also State v. Salsman,* 112 N.H. 138, 290 A.2d 618, 621 (1972) (considering the nature of the items, description "42 sheets of plywood" was sufficient). As noted by Professor LaFave, "[a] more general type of description will be sufficient when the nature of the objects to be seized are such that they could not be expected to have more specific characteristics." LaFave, *supra,* § 4.6(a), at 238–239.

Farm animals have been held to be the type of objects which cannot be exactly described. In *Mann v. State,* 180 Ind.App. 510, 389 N.E.2d 352 (1979), several six-to-eight week old piglets had been stolen. In upholding a warrant authorizing a search for the piglets, the court stated: "A more thorough description is difficult to imagine, as 6–8 week old piglets are not normally the subjects of detailed morphological identification." *Mann v. State, supra,* 389 N.E.2d at 356. *See also People v. Reed,* 121 Cal.App.3d Supp. 26, 176 Cal.Rptr. 98, 102 (1981) (warrant authorizing seizure of "horses, dogs, cats" sufficiently particular under the circumstances).

Similarly, holstein calves are not normally the subject of detailed morphological identification and do not lend themselves to easy identification by a written description. Any attempt by law enforcement officers to seize the correct animals using such a description, without the owner's assistance, is likely to be futile. At the suppression hearing the district court noted this factor:

> "And I also want to say that I don't think that you were perhaps able, as the State, to provide a more ample description. I mean, black and white Holstein calves with spots on the side almost all look alike anyway. I mean, it is—anybody who has any experience with Holsteins, unless you are around the same animals the only people that can reasonably identify them are people who work with them. And there is—even a picture to an officer, if for example the farmer would happen to take pictures of his livestock and happen to have a picture, even the picture wouldn't help the officer identify or be able to identify those animals with any particularity."

■ We conclude that this case falls within that class of cases described by Professor LaFave when he states: "Failure to provide all of the available descriptive facts is not a basis for questioning the adequacy of the description when the omitted facts could not have been expected to be of assistance to the executing officer." LaFave, *supra,* § 4.6(a), at 239. It is conceded that additional information could have been included in this warrant. It appears, however, that even with that additional information, an officer would not have been able to execute this warrant and select the exact animals described from the more than 100 head of cattle present on the Dallman farm. While it may be possible to give a fairly exact description of an item such as a microwave oven, utilizing size, color, brand name, model number, serial number, etc., it is virtually impossible to describe a particular holstein calf with sufficient particularity to allow a person unfamiliar with the animal to pick it out of a group of 100 similar animals. We believe that this is a case where providing the additional available information in the warrant would not have been of significant assistance to the executing officer.

In cases such as this, where stolen goods have been commingled with other goods, creating difficulties in identification, other courts have approved the seizure of the entire class of property. *See, e.g., United States v. Hillyard, supra,* 677 F.2d at 1340; *United States v. Scharfman, supra,* 448 F.2d at 1354. *See also* LaFave, *supra,* § 4.6(c), at 246. The officers in this instance did not avail themselves of this drastic procedure, but rather opted for an eminently more reasonable approach. They enlisted the aid of the owners of the stolen calves to positively identify their calves on site. They seized only those cattle which were positively identified as stolen, and did not seize any others.

We have previously approved the practice of having a theft victim accompany law enforcement personnel in execution of a warrant to assist in identifying the stolen property. *See State v. Klosterman,* 317 N.W.2d 796, 803 (N.D.1982). Several cases suggest that, when only a generic description of the property is available, such a description may be sufficient if the executing officers are accompanied by someone with special expertise regarding the property, including an owner who can identify stolen property. *See, e.g., United States v. Scharfman, supra,* 448 F.2d at 1354; *Namen v. State,* 665 P.2d 557, 566 n. 14 (Alaska App.1983); *State v. Corbin,* 419 A.2d 362, 363 (Me.1980); *State v. Brown,* 708 S.W.2d 140, 143 (Mo.1986) (en banc). Professor LaFave points out that "what might otherwise be an insufficient description may be deemed adequate when the executing officers have special expertise on the subject or are accompanied by persons who have such expertise." LaFave, *supra,* § 4.6(c), at 246. Professor LaFave also suggests that the victim of a property crime may be considered an "expert" in this context. *See* LaFave, *supra,* § 4.6(c), at 246 n. 59. In this case, the executing officers availed themselves of the "expertise" of the owners of the stolen calves to ensure that only the stolen calves would be seized.

■ Another factor which weighs in favor of upholding the warrant is that the officers who testified in support of the warrant also executed the warrant. The defendants suggest that the warrant would have been sufficiently particular had it included all of the identifying details testified to by the officers. Therefore, we must examine whether the failure to include all available descriptive facts is ameliorated when the executing officers, through their prior investigation of and participation in the case, are fully aware of those facts.

Numerous cases have held that executing officers' independent knowledge of the facts and circumstances of the case may be a factor in determining whether the description of the place to be searched is constitutionally sufficient. *See, e.g., United States v. Burke,* 784 F.2d 1090, 1092–1093 (11th Cir.), *cert. denied,* 476 U.S.

1174, 106 S.Ct. 2901, 90 L.Ed.2d 987 (1986); *United States v. Turner,* 770 F.2d 1508, 1511 (9th Cir.1985), *cert. denied,* 475 U.S. 1026, 106 S.Ct. 1224, 89 L.Ed.2d 334 (1986); *United States v. Clement,* 747 F.2d 460, 461 (8th Cir.1984); *State v. Hart,* 100 Idaho 137, 594 P.2d 647, 648–649 (1979); *State v. Gonzales,* 314 N.W.2d 825, 827–828 (Minn. 1982); *State v. Smith,* 344 N.W.2d 505, 508 (S.D.) *cert. denied,* 469 U.S. 841, 105 S.Ct. 144, 83 L.Ed.2d 83 (1984). *See also* La-Fave, *supra,* § 4.5(a), at 214. Typical of the rationale employed in such cases is the following, from *State v. Sapp,* 110 Idaho 153, 715 P.2d 366, 368 (Ct.App.1986):

"The district judge found that the description of the land failed to give the meridian to which the Township, Range, and Section numbers referred, and that the county where the land was located was not mentioned. The judge concluded that, based on [*State v.*] *Yoder,* [96 Idaho 651, 534 P.2d 771 (1975),] '[a] police officer with no actual knowledge of the case could not reasonably be expected to locate the area to be searched.' *Yoder* does not require that the description be so specific that an officer with *no actual knowledge* could reasonably locate the property. To the contrary, the fact that the same officers who applied for the warrant are the same officers who execute it is a factor to be taken into consideration when evaluating the description. *United States v. Turner,* 770 F.2d 1508 (9th Cir.1985); *State v. Hart,* 100 Idaho 137, 594 P.2d 647 (1979). The purpose of the description is to allow the executing officers to ascertain and identify the property to be searched and to distinguish the intended property from neighboring property. Obviously, if the same officers are involved in obtaining and executing the warrant, these objectives are more likely to be met. That is precisely what occurred here. Thus, the possibility that neighboring properties would be mistakenly searched or that the officers executing the warrant would not be able to locate the property was significantly reduced. Likewise, to invalidate the warrant in this case because no county or meridian was listed would be to fall victim to the hypertechnical interpretation warned against in *Ventresca."* [Emphasis in original.]

We believe the same reasoning may be applied in this case. Because the same officers obtained and executed the warrant, and were armed with additional knowledge concerning the property sought, there was much less likelihood that they would exceed the permissible scope of the search or seize the wrong property.

Much the same reasoning was applied by the Supreme Court of Montana in a challenge to the particularity of the description of the items to be seized. In *State v. Peterson,* 741 P.2d 392 (Mont.1987), officers received information that a large shipment of marijuana would be arriving in a parcel via bus. Officer Wevley applied for a search warrant to seize the marijuana. In overruling a challenge to the description of the property to be seized, the court stated:

"The warrant in this case does not describe with particularity the article to be seized. The warrant authorizes the seizure of a package or parcel and the 'contraband above described,' but there is not an 'above described' large shipment of dangerous drugs or 'pot' described in the warrant as mentioned in the application.

"Standing alone, the warrant would be invalid for its failure to describe with particularity the contraband to be seized. If the warrant had been directed to an officer other than the officer who had made and signed the application, it would be invalid. However, in this case, Officer Wevley not only signed the application, which adequately described the contraband as a package containing 'pot,' but he was also the same officer who served the warrant and seized the package of pot mentioned in the application." *State v. Peterson, supra,* 741 P.2d at 394.

In concluding that the particularity requirement had been satisfied, the court stated:

"Officer Wevley did not go forth on a fishing trip with the search warrant. He identified the particular thing to be searched for in his application as a package of pot. He used the warrant to search for that particular thing, and that is what he seized. The District Court did not err in denying defendant's motion to suppress the evidence seized." *State v. Peterson, supra,* 741 P.2d at 394.

*See also Reynolds v. State,* 142 Ga.App. 549, 236 S.E.2d 525, 526 (1977). Because in this case, the same officers obtained and executed the warrant, there was a significantly reduced risk that the officers would exceed the permissible scope of the search or seize the wrong items, and the officers in fact appropriately limited their search and seized only those calves which could be positively identified as stolen.

Reviewing all of the relevant factors in this case in light of the policy bases of the particularity requirement, we conclude that the warrant description was constitutionally sufficient. The warrant did not authorize an unbounded general rummaging through the defendants' effects. Reading the warrant in a commonsense, realistic fashion, it authorized a limited search for calves and ear tags only in those places where they were likely to be found. Indeed, if the purpose of the Fourth Amendment is to restrict the scope of the search, any further description here would not have had an appreciable effect on the scope of the search. Whether searching for "livestock … which was stolen" or "four black and white holstein calves," the *scope* of the search will be essentially the same.

We are also mindful of the flexible application of the particularity requirement based upon the nature of the items sought, the place to be searched, and other relevant circumstances. This warrant did not authorize the officers to search for books, magazines, documents, private papers, or other items of a personal nature. Nor did it authorize a search of the defendants' home. Rather, it allowed the search of pastureland and outbuildings, areas not accorded the same "special protection" as the home, for stolen livestock and ear tags, items not ordinarily imbued with a high degree of personal privacy. In a Fourth Amendment context, we believe there is an appreciable cognitive difference between rummaging in a person's pasture for a stolen cow and rummaging through her nightstand for personal papers.

The watchword of the Fourth Amendment is reasonableness. In light of all of the circumstances in this case, we cannot conclude that this was an unreasonable search and seizure. In making this determination, we are mindful of the traditional constitutional preference accorded search warrants. *See, e.g., United States v. Ventresca, supra,* 380 U.S. at 109, 85 S.Ct. at 746, 13 L.Ed.2d at 689; *State v. Metzner,* 338 N.W.2d 799, 804 (N.D.1983); *State v. Iverson,* 187 N.W.2d 1, 31 (N.D.), *cert. denied* 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971). To hold to the contrary in this case "would be to fall victim to the hypertechnical interpretation warned against in *Ventresca.*" *State v. Sapp, supra,* 715 P.2d at 368.

Our resolution of this issue renders consideration of the other issues raised by the parties unnecessary. The judgments are affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.