STATE of North Dakota, Plaintiff
and Appellee,

v.

James R. SCHMITZ, Defendant
and Appellant.

Cr. Nos. 900356, 900357.

Supreme Court of North Dakota.

July 31, 1991.

Peter H. Furuseth (argued), State's
Atty., Williston, for plaintiff and appellee.

Brad L. Arndorfer (argued), Billings, Mont., for defendant and appellant.

MESCHKE, Justice.

Challenging the constitutionality of separate searches, James Schmitz appealed from convictions for theft of four implement tires and for theft of a three-point hitch. We affirm the conviction for theft of the tires, but reverse the conviction for theft of the hitch.

On June 28, 1989, detective Stancel of the Williams County Sheriff's Department questioned Schmitz about gates that had been stolen from an auction sale. While on the Schmitz farmstead, Stancel noticed a number of truck rims stacked on a pallet. Remembering that similar rims had been reported stolen, Stancel left the Schmitz farmstead and got a more complete description of the missing rims.

Upon returning to the Schmitz farmstead, Stancel noticed that the rims had been moved from the pallet. Schmitz then drove up in his pickup, and Stancel briefly discussed the missing rims with him. Noticing fresh vehicle tracks leading down the prairie trail from which Schmitz had just come, Stancel followed the vehicle tracks a short distance to a ravine. Stancel there found nine gates matching the description of the gates missing from the auction.[1] Stancel arrested Schmitz.

Schmitz consented to a search for the rims. After locating four of the seven missing rims, Stancel noticed two more rims in a pile of old tires. While dismantling the pile to retrieve the rims, Stancel found four new implement tires that matched the description of tires stolen from Boldt Farm Supply. Stancel seized the four tires and they were later con-

firmed as those stolen from Boldt Farm Supply.

On July 11, 1989, Stancel served and executed a warrant authorizing a search of the Schmitz farmstead.[2] The search warrant identified the property sought as "various items which I have reason to believe have been recently stolen in Williams County which are evidence of crimes recently committed." While conducting the warrant search, Stancel found and seized a three-point John Deere hitch that matched the description of a hitch that had been reported stolen. The owner later confirmed the identity of the hitch.

Schmitz was charged with multiple theft crimes. Felony charges for thefts of the tires and of the hitch were brought in district court. Schmitz moved to suppress evidence of the seizure of the tires and the hitch, alleging that the searches were illegal. The district court denied the motion and the case proceeded to trial.

After one day of trial, the parties entered into a plea agreement and stipulation, whereby the two felony charges were reduced to misdemeanors and refiled in county court. There Schmitz entered a conditional plea of guilty to the two charges pursuant to NDRCrimP 11(a)(2). Judgments of conviction were entered in county court, and Schmitz appealed.

## I. CONSENT SEARCH

Schmitz argues that the seizure of the four implement tires was in violation of the state and federal constitutions,[3] and that the court therefore erred in refusing to suppress the evidence.[4] Schmitz chiefly argues that the officer's search exceeded the scope of the consent given. The State

---

1. On appeal, Schmitz does not challenge the reasonableness of Stancel's actions resulting in the seizure of the gates.

2. Searches of the Schmitz farmstead were also conducted pursuant to warrants on June 29, 1989, and July 26, 1989. Those searches are not relevant to this appeal.

3. When an appellant merely makes the bare assertion that a search also violated Article I, Section 8 of the North Dakota Constitution, we treat the federal and state constitutional argu-

ments together. *State v. Kunkel,* 455 N.W.2d 208, 209 n. 2 (N.D.1990). We do so here.

4. The suppression motion was originally resolved by the district court. Pursuant to the parties' stipulation, the county court specifically adopted and incorporated the district court's findings of fact and conclusions of law on this issue. In reviewing this question, we are reviewing the findings and conclusions of the district court as adopted by the county court.

replies that the officer acted within the scope of the consent when he looked through the pile of tires and rims, and that he then saw the implement tires in plain view.

■ To be valid as an exception to the warrant and probable cause requirements of the Fourth Amendment, a consent search must be "conducted according to the limitations placed upon an officer's right to search by the consent." *State v. Huether*, 453 N.W.2d 778, 782 (N.D.1990). "The scope of a search is generally defined by its expressed object." *Florida v. Jimeno*, — U.S. ——, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991). The question whether a search exceeds the scope of consent is a factual one, subject to the "clearly erroneous" standard of review. *Huether*, 453 N.W.2d at 782; *State v. Padgett*, 393 N.W.2d 754, 757 (N.D.1986). The trial court is in a superior position to judge the credibility of witnesses, to resolve conflicts in the evidence, and to draw appropriate inferences. *Huether*, 453 N.W.2d at 783. Any conflict in the evidence is resolved in favor of affirming the trial court's determination. *Huether*, 453 N.W.2d at 783; *State v. Lorenzen*, 401 N.W.2d 508 (N.D.1987). These standards of review guide us here.

■ Schmitz argues that the consent to search for the rims extended only to the outbuildings on the farm and only while he was present. Because he did not testify, Schmitz must rely upon Stancel's testimony. However, Stancel's testimony does not clearly indicate that the consent to search was as limited as Schmitz claims. Schmitz is taking one portion of Stancel's testimony out of context to draw an inference favorable to his version of the facts. However, our review of the testimony in its entirety shows that other inferences may properly be drawn that support the court's findings. The scope of the consent was a disputed fact for the trial court to resolve. The trial

court's finding of a valid consent search is not clearly erroneous.[5]

We have reviewed Schmitz's other arguments on this question and we conclude that they are without merit. We conclude that the court did not err in refusing to suppress evidence of the seizure of the implement tires.

## II. SEARCH WARRANT

■ Schmitz argues that the search warrant executed on July 11, 1989, was facially invalid, and that accordingly Stancel's plain-view seizure of the hitch while executing the warrant was invalid. We agree.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the North Dakota Constitution command that no search warrant shall issue unless it particularly describes the things to be seized. The purpose of the particularity requirement is to prevent exploratory rummaging in a person's belongings by a general search. *See Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987); *State v. Dallmann*, 441 N.W.2d 912, 914 (N.D.1989). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 107 S.Ct. at 1016. A search warrant must particularly describe the things to be seized.

The State supplies no caselaw or other authority holding that language as nondescriptive and conclusory as that used in this warrant is constitutionally permissible. Rather, it is universally held that a warrant authorizing the seizure of "stolen property," without further particulars, is inadequate. *See* 2 LaFave, Search and Seizure § 4.6(c) (2d ed. 1987). In *United States v. LeBron*, 729 F.2d 533, 536–537 (8th Cir.

---

5. The district court's findings of fact, as adopted by the county court, are somewhat cryptic and provide small assistance to our appellate review. We will not, however, automatically reverse for more definite findings if the trial court's reasoning is fairly discernible by deduction or infer-

ence. *See Ness v. Ness*, 467 N.W.2d 716, 718 (N.D.1991); *Pfliger v. Pfliger*, 461 N.W.2d 432, 436 (N.D.1990). Although these findings of fact and conclusions of law are hardly a model of clarity or completeness, we are able to fairly discern the court's reasons.

1984), the United States Court of Appeals for the Eighth Circuit explained:

Applying this standard, courts generally approve warrants if they provide reasonable guidance to the exercise of informed discretion. Similarly, when it is impossible to describe the fruits of a crime, approval has been given to a description of a generic class of items. . . . But the general description of "property . . . believe[d] to be stolen" is not a description of a generic class. In fact, it is not descriptive at all. It is simply conclusory language. No guidelines are provided .ɔ guide the officers in their execution of the warrant or to limit their discretion. No means of distinguishing between stolen property and property that is not stolen is delineated; moreover, the distinction is not one that is readily apparent. These directions provide no protection against subjecting a person's lawfully held property to a general search and seizure. Such a general authorization allows officers to search indiscriminately throughout one's house and to seize anything they please.

[Citations omitted]. Other courts are in accord. For examples, *see United States v. Holzman*, 871 F.2d 1496, 1509 (9th Cir. 1989) (description "any property or devices used or obtained through fraud operations" insufficient); *People v. Brown*, 153 Ill. App.3d 307, 106 Ill.Dec. 99, 101, 505 N.E.2d 405, 407 (1987) (description referring to stolen property insufficient); *Commonwealth v. Rutkowski*, 406 Mass. 673, 550 N.E.2d 362, 364 (1990) (description "stolen handguns, jewelry and coins" insufficient); *State v. Connard*, 81 N.C.App. 327, 344 S.E.2d 568, 571 (1986), *aff'd*, 319 N.C. 392, 354 S.E.2d 238 (1987) (description "stolen goods" insufficient); *State v. Gallegos*, 712 P.2d 207, 209–210 (Utah 1985) (description "stolen property" insufficient). The warrant description here, "various items . . . recently stolen," is such a general authorization.

This general description furnishes no guidance to the executing officers to limit their discretion, no means of distinguishing stolen items from non-stolen items, and no protection against a broad-ranging, exploratory search. *LeBron*, 729 F.2d at 537. This vague language "is the epitome of a general warrant." *Holzman*, 871 F.2d at 1509. We conclude that this warrant did not particularly describe the things to be seized as commanded by the federal and state constitutions.

Still, the State asserts that our decision in *Dallmann* supports the use of a warrant that generically describes the property to be seized. In *Dallmann*, 441 N.W.2d at 915, the warrant authorized a search of a farm for "livestock, ear tags, and other livestock paraphernalia which was stolen." We relied upon the nature of those items in holding that, where a more specific description is impossible or would not have assisted the executing officer, a generic description of the class or type of items sought would be sufficient. We reasoned that, in searching for holstein calves, it would generally be impossible to describe the calves with sufficient particularity to allow an officer to select the exact animals described from a large herd of similar animals. *See Dallmann*, 441 N.W.2d at 916–917. *Dallmann* is clearly distinguishable from this case.

The warrant in this case did not list a certain type of stolen property; rather, it listed "various items which I have reason to believe have been recently stolen in Williams County." Nor is there an argument that the specific stolen item found, a three-point John Deere hitch, could not have been particularly described. On its face, the warrant authorized a search *anywhere* on Schmitz's farm for *anything* that might be stolen. Unlike the warrant in *Dallmann*, which restricted the search to livestock, ear tags, and livestock paraphernalia, the warrant here did not advise the executing officers, or the accused, of any restrictions whatsoever. The officers might have been looking for anything from stolen vehicles, livestock, or farm implements to stolen cash, credit cards, or jewelry. The warrant set no limits.

■ The State also argues that this description is authorized by NDRCrimP 41(b) which permits issuance of a warrant to

search for and seize "property that constitutes evidence of the commission of a criminal offense." The State entirely misconstrues the purpose of this subdivision of Rule 41. Subdivision (b) does not set forth approved language for writing the particularity requirement in search warrants; it merely states the general *categories* of evidence, contraband, criminal means, and persons for which a warrant may issue. Rule 41(b) does not displace the constitutional command that things to be seized must be particularly described in the warrant. Indeed, the particularity requirement is reflected in subdivision (c)(1) of the Rule directing that the "magistrate shall issue a warrant identifying the property ... to be seized...."

■ The State also argues that the lack of specificity in the description contained in this warrant is cured by the greater detail provided in Stancel's affidavit in support of the warrant.[6] However, the generality of a warrant cannot be cured by the specificity of the affidavit unless the affidavit is physically connected to the warrant, and the warrant specifically refers to and incorporates the affidavit. For examples, *see United States v. Stubbs*, 873 F.2d 210, 212 (9th Cir.1989); *United States v. Leary*, 846 F.2d 592, 603 (10th Cir.1988); *United States v. Weinstein*, 762 F.2d 1522, 1531 (11th Cir.), *modified*, 778 F.2d 673 (11th Cir.1985); *United States v. Strand*, 761 F.2d 449, 453 (8th Cir.1985); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir.1980); *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir.1976). Professor LaFave tells us that, although the statements in the decisions are not entirely uniform, "[a]t a minimum it must appear that the executing officer had the affidavit with him and made reference to it." 2 LaFave, Search and Seizure § 4.6(a) at 241 n. 28 (2d ed. 1987). The requirement that the affidavit be attached to, served with, and specifically incorporated into the warrant serves the purposes of circumscribing the discretion of the executing officers and notifying the person subject to the search of its permissi-

ble bounds. *See Roche*, 614 F.2d at 8–9; *In re Application of LaFayette Academy, Inc.*, 610 F.2d 1, 5 (1st Cir.1979); *Johnson*, 541 F.2d at 1315. The State concedes that Stancel's affidavit was not physically attached to the warrant, was not served upon Schmitz, and was not specifically incorporated into the warrant. We conclude that the lack of specificity in the warrant is not cured by reference to the more specific description in the affidavit.

■ A plain view seizure is proper only if the officer's initial intrusion into the constitutionally protected area was proper, and not achieved through violation of the Fourth Amendment. *See Horton v. California*, —— U.S. ——, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); *State v. Metzner*, 338 N.W.2d 799, 803 (N.D.1983). If the officer's presence is pursuant to an invalid search warrant, the seizure of evidence in plain view is also invalidated. *Metzner*, 338 N.W.2d at 803. Since the July 11, 1989 search was conducted pursuant to a facially invalid warrant, detective Stancel's intrusion into the constitutionally protected area was not proper and his seizure of the hitch in plain view was constitutionally invalid.

We conclude that the trial court erred in refusing to suppress evidence of the seizure of the hitch on July 11, 1989, but not in refusing to suppress evidence of the seizure of the four implement tires on June 28, 1989. Accordingly, we affirm the conviction for theft of the implement tires. We reverse the conviction for theft of the hitch. We remand with directions that, in accordance with NDRCrimP 11(a)(2), Schmitz be allowed to withdraw his plea of guilty to the charge of theft of the hitch.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

---

6. The only items specifically listed in Stancel's affidavit for the July 11 warrant were three

flatbed trailers and aluminum couplings.